[Cite as *State ex rel. Arline v. Indus. Comm.*, 2024-Ohio-2463.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Dorothy L. Arline, | : | |
| Relator, | : | No. 23AP-420 |
| v. | : | (REGULAR CALENDAR) |
| Industrial Commission of Ohio et al., | : | |
| Respondents. | : | |

D E C I S I O N

Rendered on June 27, 2024

**On brief:** *Jurus, Workman and Muldoon*, and *Michael J. Muldoon*, for relator. **Argued:** *Michael J. Muldoon.*

**On brief:** *Dave Yost*, Attorney General, and *John Smart*, for respondent, Industrial Commission of Ohio. **Argued:** *John Smart.*

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

LUPER SCHUSTER, J.

{¶ 1} Relator, Dorothy L. Arline, initiated this original action seeking a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying Arline's request for an extension of time to file an appeal.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this court referred the matter to a magistrate. The magistrate issued the appended decision, including findings of fact and conclusions of law. The magistrate determined that because Arline did not timely notify the Bureau of Workers Compensation ("BWC") or the commission of her change of address, the commission did not abuse its discretion in determining there was some evidence to support its conclusion that Arline's

failure to receive notice of the commission's order was not due to circumstances beyond her control and/or that Arline's failure to receive the order was due to her own fault or neglect, and, therefore she was not entitled to relief under R.C. 4123.522. Thus, the magistrate recommends this court deny Arline's request for a writ of mandamus.

{¶ 3} Arline filed objections to the magistrate's decision. Therefore, we must independently review the decision to ascertain whether the "magistrate has properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d). Arline does not challenge the magistrate's recitation of the pertinent facts; however, Arline objects to the magistrate's conclusion that there is some evidence in the record to support the commission's order denying her request for additional time to appeal pursuant to R.C. 4123.522.

{¶ 4} A brief summary of the factual circumstances is pertinent to our discussion. As the magistrate's decision explains more fully, Arline requested additional allowances for a workplace injury in a C-86 motion filed on November 3, 2021 in which Arline listed her address on Aqua Street. The BWC sent Arline a letter dated January 4, 2022 to the listed Aqua Street address informing Arline that her claim for an additional allowance was being referred to the commission to be set for a hearing. On January 28, 2022, the commission mailed notice to Arline at the Aqua Street address that a hearing on her request for additional allowances was set to occur on February 15, 2022 before a district hearing officer ("DHO"). The DHO then conducted the hearing on February 15, 2022 and, following the hearing, issued an order denying Arline's request for additional allowances. The DHO mailed the order on February 17, 2022 to Arline's address on Aqua Street.

{¶ 5} Also on February 17, 2022, a case coordinator from the managed care organization ("MCO") assigned to Arline's claim spoke with Arline by phone, and Arline told the MCO case coordinator that she did not know about the hearing before the DHO and had a new address, providing the MCO with an updated address on Bell Crossing Loop. The MCO case coordinator sent an email to BWC with Arline's new address on Bell Crossing Loop. In a BWC claim note dated February 18, 2022, BWC confirmed receipt of the email from the MCO case coordinator. Nearly five months later, on July 13, 2022, Arline sought to appeal the February 17, 2022 DHO order, requesting relief pursuant to

R.C. 4123.522. Arline then filed, on July 18, 2022, a change of contact information form with BWC listing the Bell Crossing Loop address as her new mailing and home address.

{¶ 6} The commission conducted a hearing before a staff hearing officer ("SHO") on March 29, 2023. Arline did not attend the hearing. In an order mailed March 31, 2023, the SHO denied Arline's request for relief, pursuant to R.C. 4123.522, finding Arline's failure to receive the DHO's February 17, 2022 order resulted from Arline's failure to timely notify BWC or the commission of her change of address. Arline sought reconsideration, and the commission denied her request for reconsideration in an order mailed May 6, 2023. Arline then initiated the instant mandamus action.

{¶ 7} As the magistrate notes, R.C. 4123.522 provides for additional time to appeal when a party fails to receive notice where " 'the party alleging the failure to receive notice * * * prove[s] that (1) the failure of notice was due to circumstances beyond the party's or the party's representative's control, (2) the failure of notice was not due to the party's or the party's representative's fault or neglect, and (3) neither the party nor the party's representative had prior actual knowledge of the information contained in the notice.' " *State ex rel. Rumpke Consol. Cos., Inc. v. Montague*, 10th Dist. No. 16AP-48, 2017-Ohio-6988, ¶ 30, quoting *State ex rel. LTV Steel Co. v. Indus. Comm.*, 88 Ohio St.3d 284, 286 (2000), citing *Weiss v. Ferro Corp.*, 44 Ohio St.3d 178, 180 (1989). Through her objections, Arline asserts the magistrate erroneously concluded there was some evidence to support the commission's finding that her failure to receive notice of the DHO's order was not due to circumstances beyond her control and/or was due to her own fault or neglect.

{¶ 8} Arline asserts her communication with the MCO case coordinator on February 17, 2022 constitutes notice to BWC that she had a new address such that the commission's failure to send notice of the hearing and subsequent order denying her request for additional allowances to her new address was not her fault. The record is clear that Arline did not file a change of address form with BWC or the commission until July 18, 2022, approximately five months after the commission mailed the February 17, 2022 DHO order.

{¶ 9} Furthermore, to the extent Arline asserts notice to the MCO should suffice as notice to BWC or the commission of her change in address, we are mindful that Arline

informed the MCO of her new address in a phone call on February 17, 2022, the same day the commission mailed the order denying her request for additional allowances. As the magistrate notes, because the BWC claim notes do not contain timestamps, it is not possible to discern from the record whether the MCO informed BWC of Arline's new address prior to the commission's issuance and mailing of the DHO order on the same date. We agree with the magistrate that the BWC claim notes do not clearly and convincingly prove that either BWC or the commission was aware of Arline's change of address prior to the mailing of the DHO's order. Thus, the commission did not abuse its discretion in determining that Arline's notification of her new address to the MCO on the same date as the order's mailing date did not constitute timely notification to the commission of her new address.

{¶ 10} Though Arline submitted an affidavit in support of her July 13, 2022 appeal indicating she had moved on October 1, 2021, she did not aver that she made any attempt to inform BWC of her change of address prior to February 17, 2022. Moreover, in her request for additional allowances, filed on November 3, 2021, Arline continued to list her address on Aqua Street. To the extent Arline argues both the commission and the magistrate misconstrued the relevant dates on which she claims to have informed BWC of her change of address, we note Arline did not attend the March 29, 2023 hearing before the commission held in response to her July 13, 2022 request which would have allowed her the opportunity to clarify any remaining confusion on her attempts to notify BWC of the new address. For all of these reasons, we agree with the magistrate that there was some evidence to support the commission's finding that Arline did not demonstrate that her failure to receive the DHO order was due to circumstances beyond her control and/or that the failure to receive the order was not due to her own fault or neglect.

{¶ 11} Finally, to the extent Arline argues BWC was required to send her a new notice of the DHO's February 17, 2022 order to her new address once she informed the commission or BWC of her change of address information, effectively granting her a new timeframe within which to appeal, Arline does not point to any authority indicating BWC had a clear duty to send her notice again to the new address. Instead, as this court has noted, only where the commission makes the three findings from *LTV Steel Co.* " 'does the moving party become unconditionally entitled to what amounts to a *second* notice of a

commission order.' " (Emphasis sic.)  Rumpke at ¶ 30, quoting *LTV Steel Co.* at 286-87. Having determined the commission did not abuse its discretion in finding there was some evidence to support its conclusion that Arline did not satisfy the three prongs of the *LTV Steel Co.*, the commission was not obligated to send her a second notice to her new address.

{¶ 12} Following our independent review of the record, pursuant to Civ.R. 53, we find the magistrate has properly discerned the relevant facts and appropriately applied the law.  We therefore overrule Arline's objections to the magistrate's decision and adopt that decision as our own, including findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we deny Arline's request for a writ of mandamus.

*Objections overruled*;
*writ of mandamus denied.*

EDELSTEIN and LELAND, JJ., concur.

_____

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Dorothy L. Arline, | : | |
| Relator, | : | |
| v. | : | No.  23AP-420 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

M A G I S T R A T E ' S   D E C I S I O N

Rendered on March 20, 2024

*Jurus, Workman and Muldoon*, and *Michael J. Muldoon*, for relator.

*Dave Yost,* Attorney General, and *John Smart*, for respondent Industrial Commission of Ohio.

IN MANDAMUS

{¶ 13} Relator Dorothy L. Arline seeks a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying relator's request to file an appeal.

**I. Findings of Fact**

{¶ 14} 1. Relator sustained an injury on April 1, 2021 while working for her employer, Spectrum Retirement of Ohio LLC ("Spectrum Retirement").[1] In a Bureau of Workers' Compensation ("BWC" or "Bureau") first report of an injury, occupational disease or death form ("FROI" or "FROI-1") signed by relator, relator's injury was described as follows: "Fell on [right] side when goose was flying toward me." (Supp. Stip. at 41.) Relator's home mailing address at a location on Aqua Street in Columbus, Ohio was listed on the form.

{¶ 15} 2. In an April 12, 2021 letter, which was addressed to relator at the Aqua Street address, the BWC informed relator that it had reached a decision on her claim. The BWC provided contact information for the BWC claims service specialist and managed care organization ("MCO") assigned to relator's claim. In an order dated April 12, 2021, the BWC ordered that relator's claim was initially allowed for the following conditions: sprain of ligaments of cervical spine, sprain of ligaments of lumbar spine, contusion of left wrist, unspecified sprain of right shoulder joint, unspecified sprain of left wrist, and unspecified sprain of left shoulder joint. (Supp. Stip. at 43.)

{¶ 16} 3. Relator requested additional allowances in a C-86 motion, which was signed by relator on November 23, 2021. In the motion, relator listed her address at the Aqua Street address—the same location as she provided on the FROI. (Supp. Stip. at 45.)

{¶ 17} 4. In a January 4, 2022 letter, which was sent to relator at the Aqua Street address, the BWC informed relator that it was referring her claim for an additional allowance to the commission to be set for hearing. The letter also included two recommendations. First, the BWC recommended granting relator's request for allowance of the additional condition of facet arthropathy at L4-5 and L5-S1. Second, the BWC recommended denying relator's request for allowance of the additional condition of substantial aggravation of preexisting facet arthropathy at L4-5 and L5-S1.

{¶ 18} 5. In a January 28, 2022 notice mailed to relator at the Aqua Street address, the commission informed relator of a hearing set to occur on February 15, 2022 before a

---

[1] In addition to the commission, relator named "Senior Living Capital Management Co." as respondent in her complaint. Neither this entity nor Spectrum Retirement filed an answer or otherwise participated in this matter.

district hearing officer ("DHO") regarding relator's request for additional allowances. (Supp. Stip. at 53.)

{¶ 19} 6. A February 15, 2022 BWC claim note, which was titled "Updates Received from MCO" and listed under the category "MCO," reflected relator's mailing address on Aqua Street. (Supp. Stip. at 53.)

{¶ 20} 7. The DHO conducted a hearing on relator's request for additional allowances on February 15, 2022. Following the hearing, the DHO issued an order, which was mailed on February 17, 2022. Among the addresses listed on the order, the DHO listed relator's mailing address on Aqua Street. In the order, the DHO denied relator's request for the allowance of the additional conditions of substantial aggravation of preexisting facet arthropathy L4-5 and substantial aggravation of preexisting facet arthropathy L5-S1. The DHO noted that no one was present at the hearing on behalf of relator. (Stip. at 11.)

{¶ 21} 8. A BWC claim note dated February 17, 2022, which was listed under the category "BWC," reflected that a DHO order had been issued.

{¶ 22} 9. In another BWC claim note on February 17, 2022, which was titled "Contact with Injured Worker" and listed under the category "MCO," the MCO case coordinator indicated that a return call from relator was received on February 17, 2022. (Supp. Stip. at 54.) The MCO case coordinator noted the contents of the conversation with relator as follows: "Let her know that I am now the Case Coordinator for her claim. She just had a DHO hearing and she said she didn't know anything about. Apparently, she moved and didn't notify the BWC or us." (*Id.*) The MCO case coordinator listed relator's new address at a location on Bell Crossing Loop in Westerville, Ohio.

{¶ 23} 10. In a third BWC claim note dated February 17, 2022, which was titled "Contact with BWC" and listed under the category "MCO," the MCO case coordinator provided notes about an "[e]mail to BWC" that was addressed to the BWC claims service specialist. (Supp. Stip. at 54.) As reflected in the note, the MCO case coordinator informed the BWC that she "spoke with the above listed [Injured Worker] and she didn't know about her most recent DHO Hearing." (*Id.*) The MCO case coordinator noted that relator "apparently moved" and provided relator's address on Bell Crossing Loop. (*Id.*) Furthermore, the MCO case coordinator noted: "I have updated our system, but wasn't sure if it would automatically update yours or not." (*Id.*)

{¶ 24} 11. In a BWC claim note dated February 18, 2022, which was titled "Request to Update [Injured Worker's] Address" and listed under the category "BWC," the BWC claims service specialist noted that "[p]er email from [the MCO case coordinator], the [Injured Worker's] address has changed." (Supp. Stip. at 55.) The note text included relator's address on Bell Crossing Loop and further indicated that "[t]he [Injured Worker's] customer record has been updated." (*Id.*)

{¶ 25} 12. In a BWC claim note dated February 24, 2022, which was titled "Contact with Injured Worker" and listed under the category "MCO," the MCO case coordinator noted the following:

> Received call from IW[ ]Discussion: The injection she received in her shoulder has made her pain level better. DHO hearing was denied for the Lumbar AA and injection that was requested. She is now looking into having her private insurance pay for the back injection. At this point, Dr. Bridger believes she is MMI for her allowed condition and has released her back to full duty as of 2/22/2022. IW stated that she has pretty much been doing FD since she went back to work because they are short handed. Dr. Bridger said he doesn't need to see her back unless IW starts having issues, then IW can call and set up appointment at that time.

(Supp. Stip. at 56.)

{¶ 26} 13. Relator sought to appeal the February 17, 2022 DHO order by filing a C-86 motion,[2] which was signed by relator's counsel on July 13, 2022. Relator requested relief pursuant to R.C. 4123.522, stating that she "had moved and Bureau's [sic] Notice of Hearing and Order went to her previous address." (Stip. at 4.) An affidavit signed by relator on July 13, 2022 was attached in support of the motion. In the affidavit, relator stated: "I previously had lived at [on Aqua Street in Columbus, Ohio]. I moved on October 1, 2021 and therefore did not receive notice of the Hearing or the Order from that Hearing on February 15, 2022." (*Id.* at 5.)

{¶ 27} 14. On July 18, 2022, relator filed a C-77 injured worker's change of contact information form with the BWC. In the form, which was signed by relator, relator listed the Aqua Street address as her old mailing and home address and the Bell Crossing Loop

---

[2] Relator listed the date of the DHO order as February 15, 2022. The hearing before the DHO occurred on February 15, 2022 and the order was mailed on February 17, 2022.

address as her new mailing and home address. Relator indicated the effective date of this change was July 14, 2022.

{¶ 28} 15. On March 29, 2023, a commission staff hearing officer ("SHO") conducted a hearing on relator's July 13, 2022 motion. In an order mailed March 31, 2023, the SHO denied relator's request for relief pursuant to R.C. 4123.52 and 4123.522. The SHO made the following findings in support of the denial of relief pursuant to R.C. 4123.522:

> Injured Worker's failure to receive the order of the District Hearing Officer, issued [February 17, 2022], resulted from that party's failure to timely notify the Industrial Commission or the Bureau of Workers' Compensation of her change of address. The order was issued on [February 17, 2022]; however, the notice of a changed address was not filed until [July 25, 2022]. Therefore, pursuant to R.C. 4123.522, the request for relief is denied.

(Stip. at 6.)

{¶ 29} 16. On April 10, 2023, relator filed a request for reconsideration of the SHO's March 31, 2023 order. In a memorandum in support of this request, counsel for relator stated:

> Pursuant to the claimant's Affidavit, she moved September [sic] 1, 2021 from [the Aqua Street address]. The Injured Worker had never been represented before. She retained this office to represent her July 18, 2022 and we immediately filed a change of address to her current address. It is clearly evident that the Injured Worker did not receive notice of the hearing or the final order from the hearing. When people move there are so many people you have to notify as to your change of address. The claimant in this case had not notified the Bureau. However, she did not receive any correspondence from the Bureau that would have been forwarded by the post-office. Therefore, she was clearly unaware of the hearing and therefore, did not appear.

(Stip. at 37.)

{¶ 30} 17. The commission denied relator's request for reconsideration in an order mailed May 6, 2023.

{¶ 31} 18. Relator commenced this mandamus action by filing her complaint on July 14, 2023.

## II. Discussion and Conclusions of Law

{¶ 32} Relator asserts she is entitled to a writ of mandamus because the commission abused its discretion by denying relator the opportunity to appear and testify when she had clearly notified the BWC of her change of address.

## A. Requirements for Mandamus

{¶ 33} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, a relator must establish a clear legal right to the requested relief, that the commission has a clear legal duty to provide such relief, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Belle Tire Distribs. v. Indus. Comm.*, 154 Ohio St.3d 488, 2018-Ohio-2122; *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). The relator bears the burden of establishing entitlement to a writ of mandamus by clear and convincing evidence. *State ex rel. Ware v. Crawford*, 167 Ohio St.3d 453, 2022-Ohio-295, ¶ 14. "Clear and convincing evidence is 'that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.' " *State ex rel. Husted v. Brunner*, 123 Ohio St.3d 288, 2009-Ohio-5327, ¶ 18, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus. Where the commission's factual determination is supported by some evidence, it has not abused its discretion, and this court must uphold the determination. *State ex rel. Seibert v. Richard Cyr, Inc.*, 157 Ohio St.3d 266, 2019-Ohio-3341, ¶ 44, citing *State ex rel. Pass v. C.S.T. Extraction Co.*, 74 Ohio St.3d 373, 376 (1996).

## B. Right to Notice and Effect of Failure to Receive Notice

{¶ 34} R.C. 4123.522, which governs notice requirements under the Workers' Compensation Act, provides as follows:

> The employee, employer, and their respective representatives are entitled to written notice of any hearing, determination, order, award, or decision under this chapter and the administrator of workers' compensation and his representative are entitled to like notice for orders issued under divisions (C) and (D) of section 4123.511 and section

4123.512 of the Revised Code. An employee, employer, or the administrator is deemed not to have received notice until the notice is received from the industrial commission or its district or staff hearing officers, the administrator, or the bureau of workers' compensation by both the employee and his representative of record, both the employer and his representative of record, and by both the administrator and his representative.

If any person to whom a notice is mailed fails to receive the notice and the commission, upon hearing, determines that the failure was due to cause beyond the control and without the fault or neglect of such person or his representative and that such person or his representative did not have actual knowledge of the import of the information contained in the notice, such person may take the action afforded to such person within twenty-one days after the receipt of the notice of such determination of the commission. Delivery of the notice to the address of the person or his representative is prima-facie evidence of receipt of the notice by the person.

R.C. 4123.522. "The purpose of R.C. 4123.522 is to extend the time for appeal in any case where a person can rebut the presumption of receipt of notice of the decision from the commission arising under the 'mailbox rule.' "[3] *Weiss v. Ferro Corp.*, 44 Ohio St.3d 178, 182 (1989). To this end, R.C. 4123.522 contains a "special provision providing a procedure to be followed where there is a failure to receive notice of a decision and prevails over the general provisions [providing for] the time for appeal." *Id.*

{¶ 35} The right to receive notice under R.C. 4123.522 "is not self-executing." *State ex rel. LTV Steel Co. v. Indus. Comm.*, 88 Ohio St.3d 284, 286 (2000). In order to qualify for an extension of time to appeal under R.C. 4123.522, "the party alleging the failure to receive notice must first prove that (1) the failure of notice was due to circumstances beyond the party's or the party's representative's control, (2) the failure of notice was not due to the party's or the party's representative's fault or neglect, and (3) neither the party nor the party's representative had prior actual knowledge of the information contained in the notice." *Id.*, citing *Weiss* at 180. The commission has not committed an abuse of discretion where its order granting or denying relief under R.C. 4123.522 is supported by

---

[3] The mailbox rule has been referred to in this context as a "rebuttable presumption * * * that, once a notice is mailed, it is presumed to be received in due course." *Weiss v. Ferro Corp.*, 44 Ohio St.3d 178, 182 (1989).

some evidence in the record. *State ex rel. Hernandez v. Indus. Comm. of Ohio*, 10th Dist. No. 20AP-163, 2021-Ohio-3217, ¶ 26.

**C. Analysis**

{¶ 36} Relator argues the commission erred in denying relief under R.C. 4123.522 because relator was in "continuous conversations with the Bureau of Workers' Compensation and in fact did notify them that she had moved." (Relator's Brief at 5.) Relator argues the evidence "clearly support[s] the fact that the Bureau of Workers' Compensation was aware that Relator had moved and they should have taken the correct action to make sure that her proper address was noted in the claim so that all correspondence went to the proper address." (*Id.* at 6.)

{¶ 37} This court has previously considered whether the commission erred in denying relief under R.C. 4123.522 where the party seeking relief alleged the BWC was aware of a change of address. *See State ex rel. Russell v. Indus. Comm.*, 10th Dist. No. 02AP-991, 2003-Ohio-4175. In *Russell*, the claimant filed on January 8, 2002 an initial application for workers' compensation benefits in which he listed his address at a location on Clement Street in Dayton, Ohio. On January 11, 2002, the claimant filed a request for TTD compensation in which he listed his address at a location on "Hackett" in Dayton, Ohio. *Id.* at ¶ 8. On January 28, 2002, the BWC mailed a copy of an order denying the claimant's request for TTD compensation to the claimant at the Clement Street address.

{¶ 38} On May 9, 2002, the claimant filed with the BWC a change of address notification in which the claimant stated his address had changed to the Hackett location effective April 30, 2002. Also on May 9, 2002, the claimant filed a request for relief pursuant to R.C. 4123.522, stating that he did not receive the BWC order because it was mailed to an "incorrect address." *Id.* at ¶ 16. A commission SHO denied the claimant's request for relief under R.C. 4123.522, finding that the BWC order was mailed to the claimant's correct address. The claimant then filed a mandamus action in this court to challenge the commission's denial of relief under R.C. 4123.522.

{¶ 39} Upon review of the record, this court found the claimant was "unable to prove his failure to receive notice by mail was due to circumstances beyond his control or the failure to receive notice was not due to his own neglect." *Id.* at ¶ 9. In support of this

determination, the court found the claimant could not be "absolved of fault or neglect in this matter simply because he provided the BWC with two different addresses on two separate forms." *Id*. The court found it was reasonable for the BWC to make use of the first address provided by the claimant, noting that "[a]n official notification of an address change was not received until May 9, 2002, a full two months after the BWC's order was mailed." *Id*. As a result, the court found the claimant failed to demonstrate he was entitled to relief in mandamus.

{¶ 40} Here, in support of her argument that the BWC was aware of her change of address, relator points to the text of the BWC claim note on February 17, 2022 regarding an email to the BWC. Relator argues that this claim note "confirm[s] that on February 17, 2022, the Relator clearly advised the Bureau that she moved and had given the Bureau of Workers' Compensation her current address." (Relator's Brief at 7.) Contrary to relator's contentions, the claim notes on that date reflect that relator informed the MCO case coordinator—not the BWC or one of its agents—of relator's new mailing address on Bell Crossing Loop.

{¶ 41} In one claim note on February 17, 2022, the MCO case coordinator noted that a return call from the relator had been received. The MCO case coordinator noted relator's disclosure that she had moved, and the Bell Crossing Loop address provided by relator. In another note on that same date, the MCO case coordinator noted sending an email to the BWC claims service specialist, informing the BWC claims service specialist of the contents of the MCO case coordinator's conversation with relator, including relator's new address on Bell Crossing Loop. The MCO case coordinator further noted that "I have updated our system, but wasn't sure if it would automatically update yours or not." (Supp. Stip. at 54.)

{¶ 42} An additional BWC claim note on February 17, 2022 reflects the order of the DHO denying relator's request for additional allowances. One day later, on February 18, 2022, a note from the BWC claims service specialist reflects receipt of the email from the MCO case coordinator. The BWC claims service specialist noted that relator's information had been updated with the new address on Bell Crossing Loop "[p]er [the] email" from the MCO "Case Coordinator." (Supp. Stip. at 55.) Thus, the record clearly shows relator did

not inform either the commission or BWC of her change of address on February 17, 2022; rather, relator informed the MCO case coordinator, who in turn informed the BWC.

{¶ 43} Importantly, the BWC claim notes do not reflect the time at which the notes were made. Nor do the notes reflect the time at which the events that form the subject of the notes occurred. Thus, it is not possible to discern from the record whether the MCO case coordinator emailed the BWC regarding relator's change of address prior to the issuance and mailing of the DHO order on the same date. Therefore, contrary to relator's contention, the BWC claim notes do not clearly and convincingly prove that either the BWC or the commission was aware of relator's change of address prior to the mailing of the DHO's order. *Compare State ex rel. Plonski v. Kimberly Quality Care*, 84 Ohio St.3d 363 (1999) (ordering the commission to allow the relator to proceed with a delayed appeal "since there was evidence in the Bureau of Workers' Compensation file *prior to the hearing* of relator's change of address" (Emphasis added.)).

{¶ 44} Moreover, relator did not file a change of address form with the BWC or the commission until July 18, 2022, approximately five months after the mailing of the February 17, 2022 DHO order. The record contains differing evidence on when relator's change of address occurred. In her affidavit provided in support of the July 13, 2022 motion, relator stated she moved from the location on Aqua Street on October 1, 2021. However, in the C-86 motion, which was signed by relator on November 23, 2021, relator listed her address on Aqua Street. Regardless of when relator actually changed her address, assuming for the sake of argument that relator did not receive notice of the DHO hearing or order because she had already moved, her delay in providing an official notification of a change of address until months after the issuance of the order provides some evidence of fault or neglect on the part of relator or her representative. *See Russell* at ¶ 9. This court is obligated to defer to the commission's judgment of the weight of the evidence and credibility, provided that some evidence supports the commission's determination. *LTV Steel*, 88 Ohio St.3d at 287, citing *Pass*, 74 Ohio St.3d at 376.

{¶ 45} Relator's affidavit is also notable for what is not stated. For example, relator did not state in her affidavit that, prior to the issuance of the February 17, 2022 DHO order, she had informed the BWC or commission of her new address on Bell Crossing Loop or that she had moved from the Aqua Street location. Relator also did not state that she

moved to the location on Bell Crossing Loop or provide the date on which that change occurred. Nor did relator state that she forwarded her mail from the Aqua Street address to the address on Bell Crossing Loop.

{¶ 46} Review of the record reveals that there exists some evidence that supports finding that relator's failure to receive the DHO order was not due to circumstances beyond the control of relator or her representative, or that the failure to receive the order was due to the fault or neglect of relator or her representative. *See LTV Steel* at 286. Therefore, relator has not established the SHO committed an abuse of discretion by denying her request for relief under R.C. 4123.522. *See Hernandez* at ¶ 29.

## D. Conclusion

{¶ 47} For the foregoing reasons, the magistrate concludes relator has failed to establish a clear legal right to the requested relief or that the commission is under a clear legal duty to provide such relief. Accordingly, the magistrate recommends that relator's request for a writ of mandamus should be denied.

/S/ MAGISTRATE
JOSEPH E. WENGER IV

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b). A party may file written objections to the magistrate's decision within fourteen days of the filing of the decision.